## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| DANIEL J. ANKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 08-203-SLR |
| | ) |
| STEVEN WESLEY, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

Joseph M. Bernstein, Esquire. Counsel for petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

## **MEMORANDUM OPINION**

May  *25* , 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is petitioner Daniel J. Anker's ("petitioner") application

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 10) Petitioner

was incarcerated at the John L. Webb Correctional Facility in Wilmington, Delaware,

and he is now under community supervision. For the reasons that follow, the court will

deny petitioner's application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in petitioner's post-conviction

appeal:

> [Petitioner] was a real estate lawyer practicing in Delaware as a solo practitioner. His daughter, Laura Larks, was his sole employee. In various refinancing closings, [petitioner] did not apply the money deposited into his escrow account by the new mortgagee to satisfy the existing mortgages, pay off the seller's mortgage, or, in one case, pay the money to the seller's mortgagee. When his clients realized that the money was not paid to satisfy the mortgages, they would contact [petitioner's] office. Larks would tell [the client] that it was the bank's fault, and in some cases, would say that the bank offered the client a settlement.

Anker v. State, 941 A.2d 1018 (Table), 2008 WL 187962 (Del. Jan. 9, 2008).

In June 2003, Joseph McCullough, an investigative auditor for the Delaware

Lawyer's Fund for Client Protection, discovered that petitioner had not updated his bank

account records in the program Quick Books, contrary to petitioner's representation of

his account's status. McCullough found numerous unrelated checks written to various

people and businesses leaving petitioner's client escrow account $1.5 million short. As

a result of McCullough's findings, the Delaware Supreme Court held an emergency

hearing, after which petitioner was suspended from practice pending a criminal

investigation. (D.I. 16, at p.2)

In February 2005, a New Castle County grand jury indicted petitioner and his daughter, Larks, on nineteen counts of felony theft and one count of second degree conspiracy, alleging that petitioner and Larks misappropriated funds from petitioner's client escrow account maintained as part of petitioner's law practice. In April 2005, the Delaware Superior Court granted petitioner's motion to sever the defendants for trial. (D.I. 16) The State nolle prossed ten of petitioner's felony theft charges prior to trial. (D.I. 18, Del. Super. Ct. Dckt.) The remaining nine counts of felony theft arose from nine separate real estate transactions in which petitioner acted as the closing attorney. (D.I. 16)

Petitioner's trial began in July 2005. On August 4, 2005, the jury found petitioner guilty as charged on the nine counts of felony theft and one count of second degree conspiracy.[1] The Delaware Superior Court sentenced petitioner to nineteen years of incarceration, suspended after five years for probation. The Delaware Supreme Court affirmed his convictions and sentence on direct appeal. Anker v. State, 913 A.2d 569 (Table), 2006 WL 3087169 (Del. Oct. 31, 2006).

In July 2007, petitioner filed in the Superior Court a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion in July 2007, and the Delaware Supreme Court affirmed that decision in February 2008. State v. Anker, 941 A.2d 1018 (Table),

_____

[1]On the same day that petitioner was sentenced, Larks pled guilty to one count of felony theft and one count of second degree conspiracy. She was sentenced in January 2006 to a total of seven years in prison, suspended for five years of Level IV home confinement, suspended in turn after twenty-four months for Level II probation. Larks' sentence was modified in August 2007 to allow her to move immediately to Level III probation with GPS monitoring. Larks was ordered to pay $554,046.34 in restitution.

2008 WL 187962 (Del. Jan. 9, 2008).

Petitioner's counsel timely filed the instant habeas application, asserting four grounds for relief: (1) the trial court erroneously admitted evidence that the Lawyer's Fund paid off the unpaid mortgages that formed the basis of the theft charges against petitioner, thereby violating petitioner's right to a fair trial; (2) the trial court erroneously admitted evidence regarding petitioner's prior bad acts which deprived petitioner of a fair trial; (3) the trial court erred in barring expert psychiatric testimony regarding petitioner's relationship with his co-defendant daughter and how that relationship affected his "intent" to commit the crimes; and (4) trial counsel provided ineffective assistance for six reasons. (D.I. 1) Thereafter, petitioner's counsel filed a brief, in which he withdrew claims one, two, and three, and asserted the following two claims for relief: (1) petitioner was constructively denied his Sixth Amendment right to effective assistance of counsel under *United States v. Cronic*, 466 U.S. 648 (1984), because trial counsel was suffering from a major depressive disorder during his representation of petitioner; and (2) the Delaware Supreme Court's decision to affirm the Superior Court's summary denial of petitioner's six ineffective assistance of counsel allegations for lack of prejudice at the initial pleading stage was both contrary to, and an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). (D.I. 10) The State filed an answer, arguing that the court should deny the amended application in its entirety. (D.I. 16) Petitioner's counsel filed a motion for an evidentiary hearing on the *Cronic* claim, which the court denied. (D.I. 19; D.I. 21)

Around this same time period, the case *Smith v. Spisak*, 129 S.Ct. 1319 (2009)(granting certiorari), was pending before the United States Supreme Court and

3

involved the same issue presented here, namely, whether a state court's summary denial of an ineffective assistance of counsel claim for lack of prejudice warrants relief under AEDPA where the state court did not articulate its reasoning but cited the correct *Strickland* standard in its opinion. As a result, the court stayed the instant habeas proceeding pending a resolution in *Spisak*. (D.I. 22; D.I. 23) Once the Supreme Court decided *Spisak*,[2] __ U.S. __, 130 S.Ct. 676 (2010), the court lifted the stay and directed the parties to provide supplemental briefing. (D.I. 25) The parties complied, and the petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by "fairly presenting" the

---

[2]The *Spisak* Court refused to consider the standard of review applicable to a state court's summary denial of an ineffective assistance of counsel claim. *Spisak*, 130 S.Ct. at 688. However, since deciding *Spisak*, the Supreme Court has explicitly addressed the issue in *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770 (2011). The court refers to *Richter* at length later in this opinion; both *Richter* and the parties' comprehensive supplemental briefs answer any lingering questions the court may have had regarding the issues posed to the parties in its earlier memorandum opinion.

4

substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). If the petitioner presented a habeas claim to the state's highest court, but that court "clearly and expressly" refused to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991)*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of a procedurally defaulted claim unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51; *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has

5

probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

### 1. Deferential standard of § 2254(d)

If a state court adjudicated a petitioner's habeas claim on the merits, a federal district court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). Clearly established federal law for § 2254(d)(1) purposes refers to Supreme Court holdings, rather than dicta, that were clearly

_____

[3]*Murray*, 477 U.S. at 496.

established at the time of the pertinent state court decision. *See Greene v. Palakovich*,
606 F.3d 85 (3d Cir. 2010). In turn, a claim has been "adjudicated on the merits" for the
purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on
the basis of its substance, rather than on a procedural or some other ground. *Thomas
v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d)
applies even "when a state court's order is unaccompanied by an opinion explaining the
reasons relief has been denied"; as recently explained by the Supreme Court, "it may
be presumed that the state court adjudicated the claim on the merits in the absence of
any indication or state-law procedural principles to the contrary." *Harrington v. Richter*,
___ U.S. ___, 131 S.Ct. 770, 784-85 (2011).

### 2. De novo standard of review

If, however, the state's highest court has not adjudicated a federal habeas claim
on the merits, but the merits of the claim are properly before the federal court on
habeas review, then the federal court must review the claim de novo. *See Breakiron v.
Horn*, ___ F.3d ___, 2011 WL 1458795, at *3 (3d Cir. Apr. 18, 2011) (citing *Porter v.
McCollum*, ___ U.S. ___, 130 S.Ct. 447 (Jan. 19, 2011)). De novo review means that the
court "must exercise its independent judgment when deciding both questions of
constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362,
400 (2000)(O'Connor, J., concurring).

### 3. Section 2254(e) and the presumption of correctness

Finally, whether reviewing a habeas application de novo or under § 2254(d), a
federal court must presume that the state court's determinations of factual issues are

correct. 28 U.S.C. § 2254(e)(1); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This presumption of correctness applies to both implicit and explicit findings of fact, and can only be rebutted by petitioner upon a showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341(2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

### A. Claim One: *Cronic*

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

However, in *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984), the United States Supreme Court articulated a very limited exception to *Strickland*'s prejudice requirement, holding that there are three situations in which prejudice caused by an

8

attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *Cronic*, 466 U.S. at 659 & n.25. With respect to exception two, the *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire trial. *See Bell v. Cone*, 535 U.S. 685, 697 (2002).

In this proceeding, petitioner expressly contends he "was deprived of his right to counsel under the Sixth Amendment and *United States v. Cronic* based on the combination of errors made by his trial counsel coupled with the fact that his trial counsel suffered from a severe psychiatric impairment at the time of the trial." (D.I. 10, at 26)[4] Petitioner then points to four alleged "errors" on counsel's part to support his argument that counsel was not functioning as an attorney: (1) he failed to present the defense theory of the case, namely, that Larks actually committed the thefts without petitioner's knowledge; (2) he failed to object to the introduction of testimony that the unpaid mortgages of petitioner's clients had been paid off by the Lawyer's Fund; (3) he failed to object to the bad act evidence as being inadmissible under *Getz v. State*, 538 A.2d 726, 730 (Del. 1988); and (4) he failed to object to the "victim impact" evidence as inadmissible under *Payne v. Tennessee*, 501 U.S. 808 (1991) and *Petition of State*, 597 A.2d 1 (Del. 1991). (D. I. 10 at 34-44) Given petitioner's presentation, the court

---

[4]The court's reference to page numbers of docket items in this case are the page numbers assigned by CM/ECF, not the page numbers of the original documents.

perceives claim one to allege that petitioner's case falls within the second exception identified in *Cronic*. And, as explained by the court in its earlier memorandum opinion (D.I. 22),[5] claim one must be reviewed de novo rather than under the deferential standard of § 2254(d)(1). Nevertheless, for the following reasons, the court concludes that the *Cronic* presumption of prejudice does not apply to this case.

As an initial matter, the court notes that, even if it were to assume that trial counsel was suffering from a "major depressive disorder" during petitioner's criminal trial, "there is simply nothing inherent in an attorney's illness that necessarily will impede a spirited defense 'most of the time' to justify finding the attorney's representation *per se* ineffective." *Bellamy v. Cogdell*, 974 F.2d 302, 308 (2d Cir. 1992). Consequently, in order to prevail on his *Cronic* claim, petitioner must still demonstrate that counsel completely failed to subject the prosecution's case to meaningful adversarial testing, which petitioner has failed to do. *See Cronic*, 466 U.S. at 659-97. For instance, the record reveals that trial counsel successfully obtained a severance of the two defendants for trial. Trial counsel also made oral arguments, attended pre-trial conferences, hired an investigator, argued during the trial that Larks committed the thefts without petitioner's knowledge, cross-examined witnesses, called witnesses, and made opening statements and closing arguments. Although petitioner describes four

---

[5]Although petitioner clearly presented his *Cronic* claim to the Delaware state courts, the Delaware state courts "misunderstood the nature of" petitioner's *Cronic* claim and viewed it as a claim of ineffective assistance of counsel asserted under *Strickland*. In these circumstances, de novo review is appropriate. *See Boyd v. Waymart*, 579 F.3d 330, 334 (3d Cir. 2009)("Our precedent stands for the proposition that, if an examination of the opinions of the state courts shows that they misunderstood the nature of a properly exhausted claim and thus failed to adjudicate the claim on the merits, the deferential standards of review in AEDPA do not apply.").

10

"errors" counsel allegedly committed during the trial, these errors are "plainly of the same ilk as other specific attorney errors [the Supreme Court has] held subject to *Strickland*'s performance and prejudice components." *Bell*, 535 U.S. at 697-98.

In short, it is evident that petitioner did not suffer the total lack of representation required to invoke the *Cronic* exception. Accordingly, the court will dismiss claim one and will consider petitioner's ineffective assistance of counsel allegations under *Strickland*.

## B. Claim Two: Ineffective Assistance Of Counsel

To reiterate, petitioner asserted six ineffective assistance of counsel allegations in the Rule 61 motion that he presented to the Delaware Superior Court. The Superior Court summarily denied all six allegations for lack of prejudice without requiring defense counsel to file a Rule 61 affidavit or the State to file an answer, and the Delaware Supreme Court affirmed that decision. In the instant application, petitioner argues that

[t]he State court ruling to summarily dismiss [petitioner's] *Strickland* claim was both "contrary to" and amounted to an "unreasonable application" of *Strickland*. The specific allegations of attorney error and prejudice set forth in the Rule 61 motion were at least sufficient, at the pleading stage, for the court to have directed [trial counsel] to file a response to the allegations, especially the allegation concerning [trial counsel's] alleged psychiatric impairment. If the court did not understand the allegations of "prejudice," the court should have directed [petitioner] to amend the motion or respond to the court's concerns.

(D.I. 10, at 50)

To the extent this particular claim asserts that the Delaware state courts committed an error of Delaware law during petitioner's state collateral proceeding by sua sponte summarily dismissing petitioner's Rule 61 motion at the pleading stage without requiring defense counsel to answer the allegations in a Rule 61 affidavit or

11

providing petitioner an opportunity to amend, the court reasserts that the claim fails to allege an issue cognizable on federal habeas review.[6]  See (D.I. 22 at 13-14)

However, to the extent petitioner contends that the Delaware state court's violated *Strickland* by summarily dismissing petitioner's ineffective assistance of counsel allegations in claim two for failure to demonstrate prejudice, he has asserted an issue cognizable on federal habeas review. And, while the court may share some of petitioner's concerns regarding the Superior Court's sua sponte dismissal of claim two during the pleading stage of his Rule 61 proceeding, such concern has no role in this proceeding.[7]  Rather, the issue before the court is whether the Delaware Supreme

---

[6]For instance, Delaware Superior Court Criminal Rule 61(d)(4) authorizes the Superior Court to summarily dismiss a post-conviction motion if it "plainly appears from the motion for post-conviction relief and the record of prior proceedings in the case that the movant is not entitled to relief." In turn, Delaware precedent requires a movant to support claims of ineffective assistance of counsel with "concrete allegations of actual prejudice," or risk summary dismissal. *See State v. Coleman*, 2003 WL 22092724, at *2 (Del Super. Ct. Feb. 19, 2003).

[7]In general, the court concurs with the *Richter* Court's explanation that,

[o]pinion-writing practices in state courts are influenced by considerations other than avoiding scrutiny by collateral attack in federal court. At the same time, requiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition. The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed.

*Richter*, 131 S.Ct. at 785.

It is well-settled that federal court on habeas review must defer to a state court's interpretation and application of state law, because state courts are the final arbiters of state law. However, when, as here, a petitioner alleges that defense counsel rendered ineffective assistance by failing to present certain arguments or make certain objections under state law, and the state post-conviction court summarily dismisses the allegation without providing any analysis regarding the merits of such state law arguments, the federal court may be required to consider the potential success of such arguments in

12

Court's summary affirmance of the Superior Court's dismissal warrants habeas relief.

The first step in answering this question is determining the applicable standard of review.[8] Here, when the Delaware Supreme Court summarily affirmed the Superior Court's dismissal of claim two for lack of prejudice, it stated that the Superior Court's decision was supported by the record. Viewing this statement through the lens of the recent Supreme Court decision *Richter* demonstrates that the Delaware Supreme Court's decision constituted an adjudication on the merits entitled to deferential review under § 2254(d). *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 785-86 (2011). As explained by *Richter*, there is no "text in [§ 2254(d)] requiring a statement of reasons. The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Id.* at 784. Consequently, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the

---

reviewing the ineffective assistance of counsel claim. Putting a federal habeas court in this position appears contrary to the very purpose of the deferential standard of review in § 2254(d). *Cf. Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005)(explaining that, when presented with an ineffective assistance of counsel claim based on defense counsel's failure to make an objection under state law, and the state court has already answered how the issue would have been resolved under state law, the habeas court must defer to that decision). Of course, the court recognizes that, in this case, some of the state law arguments proposed by petitioner were based on the laws of states other than Delaware, and the Delaware Superior Court's dismissal for lack of prejudice at this early stage of the collateral proceeding may have constituted an implicit determination that those arguments lacked merit because they were based on non-precedential caselaw.

[8]Petitioner, in his memorandum, and the State, in its answer, both assume that claim two was adjudicated on the merits and, therefore, was reviewable under the deferential standard of § 2254(d). (D.I. 10 at 45; D.I. 16 at 15) Petitioner's supplemental memorandum specifically asserts that claim two should be reviewed under § 2254(d). (D.I. 27 at 5-6)

13

contrary." Id. at 784-85. Although this "presumption [that a merits adjudication has occurred] may be overcome when there is reason to think some other explanation for the state court's decision is more likely," petitioner has not made any such showing here. Id. at 785. Therefore, the court must determine if the Delaware Supreme Court's rejection of petitioner's ineffective assistance of counsel claim was either contrary to, or an unreasonable application of, Strickland.

Turning first to the "contrary to" prong of the § 2254(d) inquiry, the court notes that the Delaware state courts denied the instant ineffective assistance of counsel allegations after correctly identifying the Strickland standard. In turn, neither party has identified any Supreme Court case with "materially indistinguishable facts" resulting in an outcome different from the decision reached by the Delaware state courts. Therefore, the court concludes that the Delaware Supreme Court's denial of claim two was not contrary to Strickland. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court unreasonably applied Strickland in rejecting claim two. In performing this inquiry, the court looks to the Richter Court's elaboration of the double deference owed on habeas review to a state court's decision regarding an ineffective assistance of counsel claim. For instance, Richter explains that

[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or, [as with summary decisions], could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding

14

in a prior decision of [the Supreme] Court."

*Id.* at 786. And, when the claim under review alleges ineffective assistance of counsel, the federal court

> must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."**

*Richter*, 131 S.Ct. at 788 (emphasis added). As emphasized in *Richter*, the general nature of the *Strickland* standard provides state courts with substantial leeway in applying the *Strickland* standard to individual cases, thereby resulting in a substantial range of reasonable applications under the "doubly deferential" standard of *Strickland* and § 2254(d). *Id.* at 786, 788.

And finally, when assessing prejudice under *Strickland*, the court must determine if petitioner has shown "a substantial, not just conceivable" likelihood that the outcome of the case would have been different if counsel had performed otherwise. *Richter,* 131 S.Ct. at 792. In other words, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786.

With these principles in mind, the court will undertake its "doubly deferential" review of petitioner's six specific allegations of ineffectiveness. For analysis purposes, the court will bypass the issue as to whether defense counsel's performance was

15

deficient and proceed directly to the prejudice prong of the *Strickland* analysis.[9] *See Wong v. Belmontes,* __ U.S. __, 130 S.Ct. 383, 386 (2009)(per curiam)(assuming, for purposes of analysis, that counsel's performance was deficient when prejudice inquiry was dispositive); *see also Strickland,* 466 U.S. at 688.

### 1. Trial counsel did not object to the introduction of evidence regarding petitioner's ethical violations and the Lawyer's Fund

The first ineffective assistance of counsel allegation in petitioner's Rule 61 motion asserted that counsel should have objected to the introduction of evidence in the State's case in chief concerning the investigation of petitioner by the Office of Disciplinary Counsel and actions taken by the Lawyer's Fund for Client Protection because "any relevance of the mortgage payoff evidence . . . [wa]s far outweighed by the potential for such evidence to confuse and mislead the jury." To support his argument, petitioner cited court decisions from New Jersey and California which held that it was reversible error for courts in those states to have allowed the prosecution to present evidence of the defendants' violations of attorney ethical rules, because the juries were unable to distinguish between the violation of an ethical rule and the level of criminal intent necessary to establish guilt with respect to the crimes charged. *See State v. Mahoney,* 868 A.2d 1171 (N.J. Super. Ct. App. Div. 2005), *aff'd in part, rev'd in part,* 908 A.2d 162, 174-75 (N.J. Sup. Ct. 2006); *People v. Stein,* 156 Cal. Rptr. 299, 302 (Cal. Ct. App. 1979). When the Delaware Superior Court denied this first

---

[9]The Delaware state courts also bypassed the performance prong of *Strickland* by assuming, without deciding, that counsel's performance was deficient, and proceeded directly to the prejudice prong of the *Strickland* analysis. *Anker,* 2008 WL 187962, at *2.

16

ineffective assistance allegation, it explained that

> merely arguing the Supreme Court was wrong and providing citations to cases from other jurisdictions in support of that argument does not establish prejudice. It may well be that [petitioner] knew such a showing would not be possible with regard to the vast majority of his claims in light of the [Delaware] Supreme Court's decision on the direct appeal. However, it is irrelevant as to why [petitioner] did not establish prejudice. What is relevant is that he has not made any attempt to meet his burden of establishing prejudice. Thus, the ineffective assistance of counsel claims fail.

*Anker*, 2007 WL 2200007, at \*2. The Delaware Supreme Court affirmed that judgment.

In this proceeding, petitioner contends that the Rule 61 motion filed in the

Superior Court was more than sufficient to satisfy *Strickland*'s pleading requirement

because it contained a detailed recitation of the evidence and testimony that should

have been objected to and included pinpoint references to the trial transcript. (D.I. 10,

at 44) He also asserts that

> the Rule 61 motion contained citations to legal authority to show why the evidence would have been excluded if a proper objection had been made. Finally, with respect to the Lawyer's Fund evidence, the Rule 61 motion cited to the New Jersey decision in *State v. Mahoney*, which held that the admission of evidence in a criminal trial of violation of state disciplinary rules arising from the same conduct was "prejudicial" and required a reversal of the criminal convictions.

*Id.* at 44-5. The thrust of petitioner's instant argument is that the "Superior Court

simply refused to acknowledge that prejudice under *Strickland* could be shown by citing

the court to persuasive authority that admission of the type of evidence at issue had

resulted in the reversal of a defendant's conviction." (D.I. 10, at 45 n.58)

Although creative, petitioner's argument is too speculative in nature and fails to

demonstrate a reasonable probability that the result of petitioner's **trial** would have

been different but for counsel's failure to object to this evidence. Simply stated,

17

because there is no indication that the trial court would have sustained the Lawyer's Fund objection on the basis of the non-precedential New Jersey and California cases cited by petitioner, the court cannot conclude that an objection by counsel for this reason would have resulted in a more favorable outcome for petitioner. Accordingly, the Delaware state courts' rejection of this allegation for lack of prejudice was not an unreasonable application of *Strickland*.

## 2. Trial counsel did not object to the introduction of victim impact evidence

According to petitioner's second allegation of the Rule 61 motion, defense counsel performed ineffectively by not objecting to the introduction of evidence in the State's case-in-chief concerning the emotional and financial impact of petitioner's alleged thefts on four victims. Petitioner based this argument on the rule articulated in *Payne v. Tennessee*, namely, that victim impact evidence may be admissible during the penalty phase of a capital case, not during the guilt phase. *See Payne v. Tennessee*, 501 U.S. 808 (1991). *Payne*, however, did not address the admission of victim impact statements during the guilt phase of a non-capital trial, and clearly did not establish a per se constitutional bar to the admission of victim impact statements during the guilt phase of a non-capital trial. *See Payne*, 501 U.S. at 827. In fact, the Supreme Court itself has stated that it implies no opinion as to the use of victim impact evidence in non-capital cases. *See Booth v. Maryland*, 482 U.S. 496, 509 n.12 (1987), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808, 827 (1991). And, as recently explained by Justice Stevens, even in capital cases, the "Court has left state and federal courts unguided in their efforts to police the hazy boundaries between

18

permissible victim impact evidence and its impermissible, unduly prejudicial forms."[10]

*Kelly v. California*, 129 S.Ct. 564, 566 (2008).

Given the absence of a clear directive by the United States Supreme Court or

the Third Circuit regarding the admission of victim impact evidence during the guilt

phase of a non-capital trial, the court will treat the allegedly erroneous admission of

victim impact evidence during the guilt phase of petitioner's non-capital case as any

other alleged state evidentiary error. Applying this rationale, the admission of the victim

impact evidence cannot constitute a due process violation warranting habeas relief

unless the error was so pervasive as to have denied the defendant a fundamentally fair

trial.[11] *See Payne*, 501 U.S. at 825; *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Here, during petitioner's direct appeal, the Delaware Supreme Court opined that

[l]ike the other types of evidence complained of, [petitioner] did not object to
these statements made during the trial. [Petitioner] has not shown that the
admission of the evidence affected the outcome of the trial. **The consequence
of nonpayment of a mortgage on a mortgagor's credit standing is obvious.
Only four of the nine victims testified concerning the effect on their credit.
A less favorable credit rating due to the failure to satisfy a mortgage is not**

_____

[10]Delaware follows the rule articulated in *Payne* and permits the admission of
victim impact evidence during the penalty phase of both capital and non-capital cases.
*See Petition of State*, 597 A.2d 1 (Del. 1991). Although Delaware's rule regarding the
admission of victim impact evidence during the guilt phase of non-capital cases is not
clear, any such rule would be a matter of state law and would not present a federal
constitutional argument.

[11]This inquiry is the same analysis utilized by federal courts when presented with
a claim that a state court made an erroneous evidentiary ruling. As explained by the
Third Circuit, "[w]hen it must be said that the probative value of such [erroneously
admitted] evidence, though relevant, is greatly outweighed by the prejudice to the
accused from its admission, then use of such evidence by a state may rise to the
posture of fundamental fairness and due process of law." *Lesko v. Owens*, 881 F.2d
44, 52 (3d Cir. 1989).

**the type of impact evidence that would infuriate a jury to the point of "manifest injustice."** We find no plain error.

Anker, 2006 WL 3087169, at \*2. The Delaware Supreme Court's statement that the "consequence of nonpayment of a mortgage on a mortgagor's credit standing is obvious" indicates that the Delaware Supreme Court did not view the witnesses' statements about their bad credit as constituting impermissible victim impact evidence under Delaware law. Given this situation, petitioner cannot successfully contend that trial counsel provided ineffective assistance in failing to object to the statements. Moreover, even if the testimony did constitute impermissible victim impact evidence under Delaware precedent or Federal constitutional law, viewing that testimony in context with the totality of the proceeding demonstrates that the four short statements regarding the witnesses' bad credit were so brief and minor that they were not so unduly prejudicial so as to render petitioner's trial unfair.

Thus, once again, given the speculative nature of the underlying argument, petitioner has failed to demonstrate that the Delaware Supreme Courts' denial of allegation two was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S.Ct. at 786. Accordingly, the court concludes that the Delaware Supreme Court's denial of allegation two does not warrant habeas relief.

### 3. Trial counsel did not object to prior bad acts evidence

In allegation three of the Rule 61 motion, petitioner complained that counsel erred in failing to object to the introduction of evidence concerning petitioner's character and prior bad acts as being inadmissible under Delaware Rule of Evidence 404(b) and

20

*Getz v. State*, 538 A.2d 726, 730 (Del. 1988). The "objectionable" evidence consisted of the following: (1) evidence that, for several years, petitioner had falsely certified to the Delaware Supreme Court that his escrow and operating accounts were in compliance with the Delaware Supreme Court's rules; (2) evidence that petitioner had been delinquent for several years in paying his federal income taxes; and (3) evidence that petitioner had failed to pay a $211,000 insurance settlement to his clients. (D.I. 10 at 41-42) On direct appeal, however, the Delaware Supreme Court found that the evidence was relevant and, therefore, admissible under Delaware Rule of Evidence 404(b). *See Anker*, 2006 WL 3087169, at \*2. The Delaware Supreme Court also concluded that the trial judge's limiting instruction was consistent with *Getz v. State,* 538 A.2d 726 (Del. 1988). *Id.*

On habeas review, this court must accord great deference to the Delaware Supreme Court's evidentiary ruling that this evidence was admissible under Delaware law, and claims based on state court evidentiary errors cannot warrant habeas relief unless the petitioner demonstrates that the error was so pervasive that he was denied the fundamental right to a fair trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Here, petitioner's argument as to why the aforementioned evidence should not have been admitted is essentially the same, if not completely identical to, the argument he presented on direct appeal, and does not identify any Supreme Court case clearly establishing that the admission of prior bad acts constitutes a violation of federal constitutional rights. Consequently, petitioner has failed to demonstrate that the Delaware state courts' rejection of petitioner's argument concerning counsel's failure to object to evidence that was actually held admissible under Delaware law was "so

21

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786. Accordingly, the court concludes that the Delaware Supreme Court's denial of allegation three does not warrant habeas relief.

### 4. Trial counsel did not educate the jury regarding the difference between a violation of an attorney's disciplinary rule and one's liability for criminal conduct

Petitioner next complains that trial counsel failed to educate the jury concerning the distinction between an attorney's liability for violating a disciplinary rule and one's liability for criminal conduct. The record belies this assertion; in his closing argument, defense counsel explained that petitioner's violation of legal ethical rules did not constitute a crime. Counsel also explicitly stated that "you are not to take it [petitioner's ethical problems] as evidence that he committed any crimes." (D.I. 12, at A-169) Given this record, there is no basis for the court to rule that the Delaware state courts' rejection of this claim for lack of prejudice was an unreasonable application of *Strickland*.[12]

---

[12]The court notes that petitioner cannot demonstrate prejudice for an additional reason. Petitioner raised two arguments on direct appeal regarding potential juror confusion which directly pertains to the instant ineffective assistance of counsel allegation. First, petitioner argued that the Superior Court erred by admitting evidence that the Lawyer's Fund for Client Protection ("Lawyer's Fund") paid the victim's unpaid mortgages because the evidence confused the jury into believing that

> the Lawyer's Fund had already decided that [petitioner] was responsible for the missing money. What was the jury to think after being presented with evidence that the legal profession itself had decided that [petitioner] was responsible for the unpaid mortgages? Furthermore, the propensity for this evidence to persuade the jury that [petitioner] was guilty was enhanced by the fact that the jury was also told that [petitioner] was being investigated by the Office of Disciplinary Counsel and that [petitioner] had been temporarily disbarred and the

22

## 5. Trial counsel did not utilize evidence uncovered by investigator

Petitioner's fifth complaint regarding counsel's performance is that counsel did

not utilize evidence collected by an investigator demonstrating that Laura Larks forged

---

court had appointed a Receiver to take over his practice.

(D.I. 18, App. Op. Br. in *Anker v. State*, No.552,2005, at 22) Second, petitioner argued that the Superior Court violated *Getz v. State*, 538 A.2d 726 (Del. 1988), in admitting evidence regarding certain "bad acts" of petitioner because

whether or not [petitioner] falsely certified to the Supreme Court that his escrow account was in order, and whether or not [he] paid his federal taxes on time had nothing whatsoever to do with the sole issue in the case – whether [petitioner] had the criminal intent to steal the money that should have been used to make the mortgage payoffs. The only inference the jury possibly could have drawn from such evidence was that [petitioner] was a dishonest person who lied to the Supreme Court and didn't pay his taxes and therefore was guilty of the alleged thefts.

(D.I. 18, App. Op. Br. in *Anker v. State*, No.552,2005, 24-25)

The Delaware Supreme Court affirmed petitioner's conviction after determining that these (and other) alleged errors did not amount to plain error. With respect to the potential confusion caused by evidence of the Lawyer's Fund's pay-offs, the Delaware Supreme Court held that the "Lawyer's Fund is not a tribunal . . . [and] there is nothing in the record to support [petitioner's] argument that the jury equated the payments by the Lawyer's Fund with his being found guilty of any crime." *Anker*, 2006 WL 3087169 at *2. As for the potential confusion caused by the admission of petitioner's false certification regarding the status of his escrow accounts, the Delaware Supreme Court determined that the evidence was relevant, and that the trial judge's limiting instruction with respect to this evidence was consistent with *Getz*. *Id.*

Petitioner has not rebutted the Delaware Supreme Court's factual finding that the jury was not confused by the evidence of the Lawyer's Fund's pay-offs and, therefore, the court must accept the finding as correct. In addition, the court must accept the Delaware Supreme Court's conclusion that the admission of the "bad act" evidence was correct under Delaware law. Consequently, if the challenged evidence was properly admitted and did not cause jury confusion, then counsel's alleged failure to educate the jury on the difference between an attorney's liability for violating a disciplinary rule and his liability for criminal conduct cannot satisfy *Strickland*'s requirement that counsel's allegedly deficient performance prejudiced petitioner.

checks, diverted funds from the escrow account, created fake emails, and prevented clients from directly contacting petitioner. Once again, however, the court concludes that petitioner cannot satisfy the doubly deferential standard of § 2254(d) and *Strickland*; even if defense counsel did not formally question the private investigator during the trial in order to elicit this information, the jury was presented with the substance of the evidence developed by the investigator regarding Laura Larks' role in the thefts through petitioner's testimony and the testimony of several witnesses. For instance, many victims testified that all of their communications were with Larks, not with petitioner. The jury heard testimony that Larks "borrowed" money from petitioner without petitioner's knowledge. Trial counsel's direct examination of petitioner suggested that Larks manufactured emails regarding the transfer of money to and from accounts. And finally, testimony revealed that certain checks did not appear to have been signed by petitioner. This record provided a reasonable basis for the Delaware state courts to have concluded that counsel's failure to call the investigator did not prejudice petitioner. Based on the foregoing, the court concludes that petitioner's fifth allegation of error does not warrant habeas relief.

### 6. Trial counsel did not inform petitioner about his major depressive disorder

Lastly, petitioner contends that trial counsel should have informed petitioner that he (counsel) was suffering from a major depressive disorder. However, as the court already explained in its discussion of petitioner's *Cronic* claim, even if counsel was suffering from a major depressive disorder, petitioner has failed to demonstrate that counsel's illness detrimentally affected his representation. Particularly significant is

24

petitioner's failure to allege that he would have sought different counsel had he been aware of his trial counsel's major depressive order. Accordingly, the court concludes that the Delaware state courts reasonably applied *Strickland* in holding that petitioner did not demonstrate the requisite prejudice to prevail on this argument.

In summary, applying "doubly deferential judicial review" to petitioner's ineffective assistance of counsel allegations, the court concludes that the Delaware state courts' summary dismissal of claim two for lack of prejudice was neither contrary to, nor an unreasonable application of, *Strickland*. Accordingly, the court will deny claim two in its entirety.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2008). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.